UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARTIN RAGLAND DIGGS,                              :
                    Plaintiff,                :
    v.                                                     :           MEMORANDUM & ORDER
                                                 :
NEW YORK POLICE DEPARTMENT,             :           04-CV-1849 (CBA)(LB)
PETER GARRIDO, DANIEL PEREZ AND         :
THE CITY OF NEW YORK,                              :
                                                 :
                    Defendants             :
-----------------------------------------------------------------x
AMON, UNITED STATES DISTRICT JUDGE:

I.     Introduction

      This action arises out of the arrest of plaintiff Martin Diggs on May 23, 2003. Plaintiff was subsequently convicted of criminal possession of a weapon in the second and third degrees and attempted murder of a police officer in the first degree. Plaintiff brought the present action against the arresting officers, the City of New York and New York City Police Department alleging excessive force was used in his arrest. Plaintiff brought claims for excessive force, assault and battery under 42 U.S.C. §1983 and for common law excessive force, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence. Defendants moved for summary judgment and plaintiff opposed. For the following reasons, defendants' motion is granted and the case is dismissed in its entirety.

II.    Facts

      On May 22, 2003, New York City Police Officers Perez and Garrido received a radio broadcast describing a suspicious male located near Carlton and Vanderbuilt Streets in Brooklyn. Transcript of Trial of Martin Diggs ("Trial Tr.") at 329-30, 414. The officers responded to the call, noticed plaintiff, identified themselves as police and questioned plaintiff as to whether he

1

had seen anyone looking into vehicles. Trial Tr. at 332-33. Plaintiff informed the officers that he had not and that he was heading to the store. The officers left plaintiff and continued to patrol the area.

Several minutes later, having circled back to the same area, the officers again noticed plaintiff, now following someone toward the door of a building. Trial Tr. at 420. When plaintiff noticed the police officers' vehicle had returned, he quickly change direction away from the building. Trial Tr. at 337-40, 421. The officers then drove up to plaintiff and asked to speak with him again, but he became argumentative and stated that he was heading home. Trial Tr. at 342. Officer Garrido then exited the patrol car from the passenger side, and Officer Perez exited from the driver's side several seconds later. Trial Tr. at 342, 423-24. As Officer Garrido approached plaintiff, he told Officer Garrido that he was not going back to jail and began reaching behind his back with his left hand. Officer Garrido grabbed plaintiff's left arm and a black weapon fell to the ground next to him. Trial Tr. at 344, 424-25. Officer Perez signaled to Officer Garrido that they were going to arrest plaintiff. Plaintiff then began to reach with his right arm towards his front waist area. Officer Perez grabbed Plaintiff and a struggle ensued in which Officer Perez pulled plaintiff to the ground. Trial Tr. at 348. When Officer Garrido saw the black gun that had fallen from plaintiff's back on the ground, he released plaintiff long enough to secure the weapon and place it in his waistband, and then attempted to apply handcuffs to plaintiff. Trial Tr. at 428. Just as Officer Garrido had gotten one cuff on plaintiff, two shots were heard and Officer Garrido stated that he had been hit. Trial Tr. at 428-29. As Officer Perez pulled Officer Garrido away from plaintiff, both officers observed plaintiff raising a silver object and Office Garrido returned fire with the weapon he had placed in his waistband.

2

Trial Tr. at 351, 431-33. Officer Garrido then realized he had been shot in the chest and ankle. Trial Tr. at 433. An ambulance was called shortly after the shots were fired and arrived soon after. Plaintiff was taken to a hospital and treated for gunshot wounds. Plaintiff was subsequently charged and convicted of the crimes stated above and sentenced to the maximum sentence allowed.

Plaintiff alleges that when the officers approached him for the second time, they immediately knocked him unconscious and he remained so until waking in the hospital. Consequently, plaintiff argues that defendants violated his constitutional rights by using excessive force is arresting him.

III. Discussion

Defendants have moved for summary judgment on several grounds. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.

Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003). "The judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. To defeat summary judgment, therefore, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).

    A.    Collateral Estoppel

Defendants argue that plaintiff's conviction of attempted murder of a police officer in the first degree collaterally estops him from claiming that excessive force was used against him. The doctrine of collateral estoppel "applies when §1983 plaintiffs attempt to relitigate in federal courts issues decided against them in state criminal proceedings." Allen v. McCurry, 449 U.S. 90, 102 (1980). Under New York law, collateral estoppel will only apply if "the issue in

question was actually and necessarily decided in a prior proceeding, and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Colon v. Coughlin, 58 F.3d 865, 869 n.2 (2d Cir. 1995). There are four requirements that must be met for a court to apply the doctrine: 1) the issues of both proceedings must be identical, 2) the relevant issues were actually litigated and decided in the prior proceeding, 3) there must have been a full and fair opportunity for the litigation of the issues in the prior proceeding and 4) the issues were necessary to support a valid and final judgment on the merits. Central Hudson Gas & Elec. Co. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995).

With regard to an excessive force claim, the doctrine of collateral estoppel would bar such a claim "if the facts actually determined in the plaintiff's prior 'criminal conviction . . . necessary to [that] judgment . . . are incompatible with the claim of excessive force being raised in the subsequent civil suit.'" Allison v. Farrell, No. 97-2247, 2002 U.S. Dist. LEXIS 975 (S.D.N.Y. Jan. 22, 2002) (quoting Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) (per curiam)). An excessive force claim depends on the objective reasonableness of the officer's conduct under the circumstances. Graham v. Connor, 490 U.S. 386, 394 (1989). The "objective reasonableness standard" must be applied "using a totality of the circumstances approach that includes an examination of the severity of the crime at issue, the immediate threat the suspect poses to the officer and others, and whether the suspect is resisting arrest or attempting to flee." Id. at 396.

However, the fact that "a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it

does not give the officer license to use force without limit.  The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened or reasonably perceived to be threatened, against the officer." Sullivan, 225 F.3d at 166 (emphasis in original).

The jury convicted plaintiff of criminal possession of a weapon in the second and third degrees and attempted murder of a police officer in the first degree.  In so finding, the officers' conduct was not at issue.  It is conceivable under the objective standard, however unlikely under these facts, that a police officer's response to an attempt on his life could be unreasonable.  See Sullivan, 225 F.3d at 166.  See also, McNamee v. City of New York, No. 98-6275, 2002 U.S. Dist. Lexis 4684, at *2 (S.D.N.Y. March 21, 2002) (holding that where the jury necessarily found that plaintiff had a gun and shot with the intention of killing the police officer and the court could not "fathom how [plaintiff] could prove his excessive force claim," that collateral estoppel was nonetheless inappropriate because the officer's conduct was not at issue in the criminal trial).  With respect to the struggle, the jury found only that plaintiff shot with the intent to kill Officer Garrido, and made no findings as to the officers' prior conduct or response thereto.  Estoppel "extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution.'" Hemphill v. Schott, 141 F.3d 412 (2d Cir. 1998) (quoting Emich Motors v. General Motors, 340 U.S. 558, 568-69 (1951)).  As the reasonableness of the officers' conduct was not an issue necessarily decided by the jury, plaintiff is not collaterally estopped from claiming that the officers' used excessive force.

Although the conduct of the officers was not at issue in plaintiff's criminal trial, and thus is not subject to collateral estoppel, plaintiff's conduct was and so is.  In convicting plaintiff of criminal possession of a weapon in the second and third degrees and attempted murder of a

police officer in the first degree, the jury found that plaintiff fired a weapon with the intent to kill Officer Garrido. Therefore, plaintiff's conduct was at issue in both the criminal and present proceeding, it was actually litigated and decided in the criminal trial, plaintiff had a full and fair opportunity to litigate the issue of his conduct at his criminal trial, and his conduct was necessary to support the final judgment on the merits that he had in fact committed those crimes. Accordingly, plaintiff is collaterally estopped from arguing that he was unconscious or that he otherwise did not in fact fire a weapon with the intent to kill Officer Garrido. As the officers' trial testimony is thus undisputed, there is no triable issue of material fact as to whether plaintiff attempted to murder Officer Garrido. If a suspect threatens an officer with a weapon, the officer may use deadly force in response. Estate of Kenneth Jackson v. City of Rochester, 705 F.Supp 779, 783 (W.D.N.Y. 1989) (citing Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)). Accordingly, the Court finds as a matter of law that excessive force was not used to arrest plaintiff in light of the threat that he posed.

The Court further notes that in any event the officers would be entitled to qualified immunity as it was objectively reasonable for them to believe that their actions were lawful at the time of the challenged act. Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001). The threat plaintiff's attempted murder posed to Officer Garrido was extreme in its severity and mortal in nature. Thomas v. Roach, 165 F.3d 137, 143 (2d. Cir. 1999). In light of this threat, Officer Garrido's action - returning fire - was objectively reasonable from the perspective of a reasonable officer. Jackson, 705 F.Supp at 784 (holding that when faced with imminent (or actual) use of deadly force against themselves or others, police officers "may respond in kind").

Accordingly, plaintiff's § 1983 claims against the officers are dismissed.

7

B.    Claims Against the City

Under § 1983, a municipality may be held liable for a constitutional violation if the plaintiff can prove that the violations resulted from a municipality's customs or policies. Smith v. Edwards, 175 F.3d 99, 107 (2d Cir. 1999) (citing Monell v. Department of Soc. Servs., 436 U.S. 658 (1978). As plaintiff has made no allegations that a municipal policy or custom resulted in his alleged harm, nor proven that he suffered any constitutional violation, this claim is dismissed. See Coon v. Town of Springfield, 404 F.3d 683, 685 (2d Cir. 2005) (citing Monell, 436 U.S. at 662); Smith, 175 F.3d at 107.

C.    Claims Against Police Department

Defendant "New York City Police Department" is an agency of the City of New York and may only be sued in the name of the City. Plaintiff has not opposed this portion of the motion, and it is granted. See Lauro v. Charles, 219 F.3d 202, 205 (2d Cir. 2000).

D.    State Law Claims

In his Amended Complaint, plaintiff brought claims for common law excessive force, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence. New York General Municipal Law requires that any state tort claim against the City of New York or any of its agents be presented as a Notice of Claim within ninety days after the claim arises and that the action be commenced within one year and ninety days of the date the cause of action accrued. New York Gen. Mun. Law §50-e,-i. Plaintiff must also allege in his complaint that he complied with these provision and that in that time defendants neglected to or refused to adjust or to satisfy the claim. Davidson v. Bronx Municipal Hospital, 64 N.Y.2d 59, 62 (1984) (citing Giblin v Nassau County Med. Center, 61 N.Y.2d 67, 73-74

(1984)). Failure to comply with these provisions ordinarily requires dismissal. <u>423 South Salina Street, Inc. v. Syracuse</u>, 68 N.Y.2d 474, 489 (1986) (holding that the Notice of Claim requirements apply to federal § 1983 claims).

Plaintiff alleged in his Amended Complaint that a notice of claim was served upon the City of New York within ninety days of the incident, that more than thirty days elapsed without response from the City, and that the action was commenced within one year and ninety days of the accrual of the cause of action. (Complaint ¶¶ 28-30). However, defendant City of New York wrote to plaintiff on June 24, 2005, stating that its search had revealed no record of a Notice of Claim having been filed. Defendant requested that plaintiff accordingly withdraw its state law claims. (Letter to Michael Braunsberg, Eichenholtz Decl., Exh. A). Plaintiff does not appear to have responded and did not withdraw these claims. Now, in opposition to this motion for summary judgment, plaintiff's counsel admits that he possesses no Notice of Claim and has no evidence that it was ever filed. Accordingly, plaintiff's state law claims are dismissed.

IV. <u>Conclusion</u>

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's case is dismissed in its entirety.

SO ORDERED

Dated: Brooklyn, New York
December 22, 2005

Carol Bagley Amon
United States District Judge